No. 45,906

WILLIAM E. DANIELS and SYLVIA N. DANIELS, *Appellants*, v. KANSAS HIGHWAY PATROL, et al., *Appellee*.

(482 P. 2d 46)

Opinion filed March 6, 1971.

*Howard Harper,* Junction City, of the firm of Harper, Hornbaker, Waters & Abbott, argued the cause and was on the brief for the appellants.

*Edward G. Collister, Jr.,* Assistant Attorney General, argued the cause, and *Kent Frizzell,* Attorney General, and *Richard H. Seaton,* Assistant Attorney General, were with him on the brief for the Kansas Highway Patrol, appellee.

*L. O. Bengston,* of Salina, argued the cause and was on the brief for the City of Salina, appellee.

The opinion of the court was delivered by

PRICE, C. J.: This was an action by parents to recover for the wrongful death of their son (K. S. A. 60-1901).

The narrow question presented is whether the doctrine of immunity from tort liability—heretofore extended to agencies of the

state and to municipalities when engaged in governmental functions—is to be abolished.

The trial court adhered to the long established rule of immunity. Plaintiffs have appealed.

We affirm the judgment.

Highly summarized—the petition alleged this tragic sequence of events.

Plaintiffs' son, Thomas E. Daniels, a University of Kansas student, was employed as a night clerk at a motel in Lawrence. At about 1:00 o'clock in the morning of June 27, 1967, while at work, he was accosted by two armed robbers—Sparks and Lynch—who had just committed several armed robberies in Lawrence and had shot one or more persons in the commission thereof. At gun-point, and under threats of death, they abducted Daniels and forced him to drive his blue 1964 model car west out of Lawrence.

Shortly, an alarm was sounded and the Lawrence police department alerted law enforcement agencies—including the Kansas Highway Patrol and the police department of the City of Salina—of the abduction, description of the car, and of the fact Daniels might be a hostage. In the meantime the car was speeding westward with Daniels at the wheel and a gun at his head. Roadblocks were set up on the main highway east of Salina—but to no avail. Upon reaching the east city limits of Salina the car turned off the highway so as to avoid further roadblocks—with the Kansas Highway Patrol and Salina police cars in hot pursuit.

Finally, after numerous shots had failed to halt the car, a Salina policeman drove his police car into the left side of the fleeing car and opened fire point-blank on Daniels, striking him in the head and causing the car to go out of control and strike a building. The abductors—Sparks and Lynch—were apprehended at the scene.

Daniels was removed to a hospital where he died the next day.

Plaintiffs brought this action against the Kansas Highway Patrol, the City of Salina, and certain named individual patrolmen and policemen who were participants in the chase and apprehension—alleging that their son's death was caused by the negligent, wrongful and unlawful actions of the officers in that they knew, or should have known from the information relayed to them that Daniels was a hostage in the car, and that they owed him the duty to protect him and save him from injury.

Motions to dismiss the action against them were filed by the Kan-

sas Highway Patrol and the City of Salina. These motions to dismiss were sustained on the ground the doctrine of immunity from tort liability extends to law enforcement agencies of the state and municipalities.

We are not advised as to the status of the action against the individual defendants, and no question concerning it is involved in this appeal.

Counsel for plaintiffs frankly concedes that it has been held many times that—absent a statute imposing liability—the state (and agencies thereof) and municipalities (cities) are immune from tort liability when engaged in a governmental function—but contends the doctrine—being of ancient and somewhat doubtful origin—should be abolished as not being in the best interests of the public in these modern times.

The historical background of the doctrine—together with the reasons advanced as to why it should be abolished—have been discussed in decisions of this court and there is no occasion to repeat. Contentions made here are identical to those previously made—and consistently have been rejected.

It has been held many times that the operation of a police department by a city is a governmental function (*Wommack v. Lesh*, 180 Kan. 548, 305 P. 2d 854), and that a city is not liable for the negligence or misconduct of its police officers when engaged in the performance of governmental functions (*Gardner v. McDowell*, 202 Kan. 705, 451 P. 2d 501). Also, see *Parker v. City of Hutchinson*, 196 Kan. 148, 410 P. 2d 347. It logically follows that the maintenance and operation by the state of the Kansas Highway Patrol as a law enforcement agency also is a governmental function and that neither the Patrol—as such—nor the state, is liable for the negligence or misconduct of its officers when engaged in the performance of governmental functions.

Throughout the many decisions dealing with the immunity doctrine it often has been said that the rule is so firmly imbedded in our law that it has become the public policy of the state—and that if it is to be abolished it is a matter for legislative determination. In response to this—the contention frequently has been made that as the doctrine itself was "court-made"—courts should not hesitate to undo the "wrong".

Although not directly in point on the question before us—attention is called to the fact that in July, 1969, this court—in *Carroll v.*

*Kittle,* 203 Kan. 841, 457 P. 2d 21 (syl. 6) abolished the doctrine of immunity as applied to all governmental bodies of the state when engaged in *proprietary* activities as distinguished from *governmental* activities. The decision did, however, (syl. 4) recognize the authority of the legislature to control the entire field of governmental immunity—including matters covered by judicial decisions. The broad-sweeping effect of the decision was of short duration, however, for, as pointed out in *Woods v. Kansas Turnpike Authority,* 205 Kan. 770, 773, 472 P. 2d 219, the next session of the legislature promptly accepted the challenge by enacting Chapter 200, Laws of 1970, now appearing at K. S. A. 1970 Supp. 46-901 *et seq.,* effective March 26, 1970.

But, in the case before us we are not directly concerned with the *Carroll* case or the subsequent legislation above mentioned, for here it cannot be denied that under all the facts heretofore related, officers of the Kansas Highway Patrol and of the police department of the City of Salina, were at the time engaged in law enforcement activity—a strictly governmental function—and as to those two defendants this action was correctly dismissed.

The judgment is affirmed.