No. 29,557.

HANS KRETCHMAR, *Appellee,* v. THE CITY OF ATCHISON, *Appellant.*

(299 Pac. 621.)

Opinion filed June 6, 1931.

*Z. E. Jackson* and *G. W. Foley,* both of Atchison, for the appellant.

*Ralph U. Pfouts* and *Lawrence F. Day,* both of Atchison, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Háns Kretchmar brought this action against the city of Atchison, and three persons, Albert H. Lehman, F. W.

Mangelsdorf and A. E. Mize, city commissioners, and also Bert C. Wells, city manager, to recover damages in the sum of $25,000 for the loss of an eye resulting from the explosion of firecrackers thrown by a group of unknown persons which, it is alleged, constituted a mob.

A demurrer to plaintiff's petition was overruled and afterwards, when his evidence was presented, a demurrer was filed by each of the defendants on the ground that plaintiff had failed to establish a cause of action against any of the defendants. This demurrer was overruled as to the city and sustained as to the other defendants. The city again demurred and raised the question that under the evidence it was not liable upon any theory other than its alleged liability under the mob act, and this demurrer was sustained, the court holding that the plaintiff was not entitled to recover on any ground other than its liability under the mob act. Evidence was proffered as to the liability of the city under the mob act and the jury failed to arrive at a verdict, whereupon it was discharged and the case continued to the next term of court.

The city appeals from adverse rulings on the motion for judgment on the pleadings; on its demurrer to plaintiff's evidence, as well as on rulings admitting evidence produced by plaintiff; and the plaintiff has filed a cross appeal and assigned error on the rulings sustaining the demurrer as to the individual defendants, also on the ruling that under the issues the city was only liable under the mob act, and he also complains as to rulings in the admission of evidence and of instructions given and refused.

The questions suggested by the city are that the pleadings and opening statement of counsel did not present facts sufficient to constitute the members of the firecracker group a mob within the meaning of the mob act. It also makes the claim that the plaintiff's evidence did not establish sufficient facts to constitute members of the group of persons a mob, nor establish a cause of action in favor of plaintiff against the city within the mob statute.

On the part of the plaintiff the contention is there was error in holding that the city was only liable under the mob act and also in holding that the mayor and other officers were not personally liable for their failure to preserve the peace and disperse the firecracker group and enforce the city ordinance prohibiting the shooting of firecrackers. He assigns error on the refusal to permit evidence of the police officials tending to show that the city and its officers

did nothing to enforce city ordinances and keep the streets in a safe condition for travel.

Taking up the question discussed by counsel and which was raised by the defendant's demurrer to plaintiff's evidence on the issues presented by the pleadings, and the opening statement of counsel, it may be said that the city is not liable for acts done in its governmental capacity as distinguished from its private and proprietary capacity. A city being a political entity, a mere agency of the state, there is no common law liability in cases of this character in the absence of a statute imposing the liability, and it is universally held that it cannot be made liable for failure to perform such duties by which persons using the street may be injured. Of course, it is the duty of the officers to police the city and enforce its ordinances, preserve order and peace on the streets, but the municipality is exempt from liability for an injury resulting from its failure to perform such public and governmental duties or for the improper or negligent exercise of its powers and duties in that respect. The enforcement of an ordinance designed to prevent disorderly assemblages in the streets like that complained of here is certainly governmental in character, and without a statutory provision to the contrary there is no civil liability of the city for the negligent performance of this duty by its officers. That rule has been frequently decided in this court and is generally the governing rule in the courts of other states. Among the many decisions of our own relating to the rule the following may be cited: *Pfefferle v. Comm'rs of Lyon Co.*, 39 Kan. 432, 18 Pac. 506; *La Clef v. City of Concordia*, 41 Kan. 323, 21 Pac. 272; *Edson v. Olathe*, 81 Kan. 328, 105 Pac. 521; *Everly v. City of Gas*, 95 Kan. 305, 147 Pac. 1134; *Butler v. Kansas City*, 97 Kan. 239, 155 Pac. 12; *Frost v. City of Topeka*, 103 Kan. 197, 173 Pac. 293; *Rose v. City of Gypsum*, 104 Kan. 412, 179 Pac. 348.

The plaintiff calls attention to the decision of *Malchow v. City of Leoti*, 95 Kan. 787, 149 Pac. 687, where a city was held liable for the blocking of a street with a merry-go-round and its equipment consisting of an engine, water tank, piles of coal, swings, guy ropes and trash of various kinds, which obstructed traffic by vehicles in the street and made it difficult and dangerous for pedestrians to get through the labyrinth without injury. That case is based on the corporate and ministerial duty of a city to maintain its streets in a condition of safety for public travel and making it liable for struc-

tural defects, excavations and other defects which render the street dangerous for travel and is unlike a case where persons passing along the street may be annoyed or injured by others using the street. The rule in the Malchow case is held to be an exception and the ministerial duty imposed directly on the city makes it responsible for negligence in discharging that duty, but it has been held that the liability—

"Does not extend to improper and unreasonable uses of the highway contrary to governmental ordinances enacted for the convenience and safety of the traveling public, and the city is not liable for breaches of such ordinances although committed with the knowledge or even the participation of its officers." (*Everly v. City of Gas,* supra, p. 307.)

With reference to that case it was said in *Rose v. City of Gypsum,* supra, that—

"The Malchow-Leoti case does not turn upon the question of a city's liability for misuse of the street, nor does that case qualify anything that this court has so often said touching a city's nonliability for the acts or delicts of its officials in relation to governmental duties." (p. 421.)

It follows that the duty of a city to enforce the ordinances prohibiting persons or groups of persons from shooting firecrackers on the streets on the Fourth of July or at any other time must be held to be governmental, and under the authorities cited and the rule universally recognized by the courts the city is immune from liability for the negligence of its officers in failing to enforce such an ordinance unless there be a statute imposing such liability. The court ruled correctly so far as it applied that rule when it sustained the demurrer on every ground except its liability under the mob act.

We still have the question: Does the mob statute making a city liable for the action of a mob apply to the firecracker group of men and boys who in their celebrating frolic the evening before the Fourth of July caused the injury to plaintiff? There is no material dispute as to the happening of the accident. The evidence is that as the plaintiff was walking down on one side of Commercial street a group of persons were shooting firecrackers and other explosives on the opposite side of the street and a firecracker thrown across the street happened to explode near the plaintiff's face and injured one of his eyes. While he still has a perception of light in his eye he cannot see to read or even see his hand held in front of him, and the evidence is that the eye is so impaired that it is of no practical use to him. It was shown that on the evening of his injury other

groups and persons were shooting firecrackers on the same and other streets of the city without interference by the police. Did the group of five or more persons that were shooting firecrackers constitute a mob within the meaning of the mob act? It reads:

"All incorporated cities and towns shall be liable for all damages that may accrue in consequence of the action of mobs within their corporate limits, whether such damage shall be the destruction of property or injury to life or limb: *Provided, however,* That the number of persons that shall constitute a mob under this act shall be five or more." (R. S. 12-201.)

It may be noted that there is no proof that the five or more unidentified persons shooting firecrackers had assembled for the purpose of injuring plaintiff, or any other person, or with the intent of destroying property. Their acts in shooting firecrackers were, of course, a violation of the ordinance, but there was nothing to show it to be a riotous group intent on doing some violent act or of injuring anyone traveling on that street. They were engaged each for himself in the old-fashioned method of celebrating the natal day, a practice which was contrary to an ordinance of the city, which seems to have been a dead letter, or at least it was not enforced by the officers of the city. Instead of being a tumultuous and riotous assemblage, bent on committing violence and wrong as against persons or property, it was rather a good-natured frolic of the young men acting individually without purpose to inflict injury to life or limb or cause the loss of property. Nor does it appear there was any concerted action in the throwing of the firecracker, as each man shot his own firecrackers, which caused the injury to plaintiff. Nor was it designed to annoy or hurt the plaintiff as the distance it was thrown, which was clear across the street, was so great as to indicate an absence of purpose to injure him. There was at least no mass purpose to do violence to anyone by the haphazard throw. We think the firecracker group cannot be regarded as coming within the meaning of the mob act. A number of cases have been decided in which a mob has been defined, and the controlling principles applied. In *Cherryvale v. Hawman,* 80 Kan. 170, 101 Pac. 994, relied on by plaintiff as sustaining his view that the group constituted a mob, a mob was defined as "an unorganized assemblage of many persons intent on unlawful violence either to persons or property." There the act was held applicable to a charivari, where a bride and groom were taken against their will by force and placed on a wagon and drawn up and down the streets making proclamation

of their nuptials, introducing them to people in burlesque speeches, drawing large crowds and causing disorder and some tumult. There was a common intent to do violence to the bride and groom, and mass action; therefore that case cannot be considered as authority in the present case. Another case relied on by plaintiff is *Blakeman v. City of Wichita,* 93 Kan. 444, 144 Pac. 816. There a prisoner was placed in a city jail with a large number of other prisoners. The latter, about thirty in number, organized what is called a kangaroo court and proceeded to try the plaintiff for breaking into their home. They found him guilty of the charge. He was then severely whipped with a strap furnished by one of the police officers. The injuries inflicted rendered him unfit for labor for a period of six months thereafter. The attacking parties joined together to do violence to the injured man. There was a common purpose and joint action in inflicting the injuries that were suffered and the attacking parties were rightly held to be a mob, but the rule there applied does not fit the facts of the instant case, nor does it furnish authority for holding the firecracker group to be a mob. Among other cases relating to the mob act and touching its application are the following: *Harvey v. City of Bonner Springs,* 102 Kan. 9, 169 Pac. 563; *Sanger v. Kansas City,* 111 Kan. 262, 206 Pac. 891; *Hendren v. Arkansas City,* 122 Kan. 361, 252 Pac. 218; *Koska v. Kansas City,* 123 Kan. 362, 255 Pac. 57; *Seigler v. Kansas City,* 131 Kan. 504, 292 Pac. 937. The ruling in the cited cases does not warrant a holding that the group performing in Atchison, where plaintiff suffered his injury, constitutes a mob within the meaning of the statute on the subject. In *Aron v. Wausau,* 98 Wis. 592, a somewhat similar question arose under the mob act of that state. There the plaintiff was injured by the explosion of a firecracker on a city street in violation of an ordinance by a group of persons who were exploding firecrackers on the Fourth of July, without a common purpose to injure anyone, and it was held that he could not recover damages from the city under the mob and riot act, which provided that three or more persons shall be guilty of a riot if they assemble in a violent and tumultuous manner to do any unlawful act or being together attempt to act in a violent, unlawful and tumultuous manner. In the opinion it was said:

"There is nothing in the complaint to indicate that the crowd in the street, or on the sidewalk, or any three or more persons in the crowd, had any common intent or purpose to injure the plaintiff or any other person by the

explosion of the cannon cracker in question. It was thrown and exploded by some one unknown to the plaintiff. Others were throwing and exploding firecrackers, but each person was, apparently, the sole manipulator of his own firecracker, and there was no common intent or purpose, of any three or more persons, to explode any particular firecracker, much less to injure the plaintiff or any other person by such explosion. It is equally apparent that it was not a mob." (p. 597.)

The conclusion is that the demurrer to plaintiff's evidence should have been sustained and judgment rendered for the city.

There is a further complaint by the plaintiff of the action of the court in sustaining the demurrer to the allegations of his petition as to the personal liability of the mayor, city commissioners and city manager. These officers are vested with legislative and executive functions involving the exercise of judgment and discretion and cannot be held liable for failure to enforce a governmental ordinance of the city; at least they were not liable in the absence of malice or corruption. The plaintiff did allege conclusions as to malice, but facts showing malice were not pleaded. The demurrer admitted issuable facts, but did not admit the naked conclusions of the pleader. There was no error in sustaining the demurrer to plaintiff's petition as against these officers.

In view of the conclusions reached, it is not necessary to consider some objections made to rulings on the admission of evidence.

The ruling on the city's demurrer to plaintiff's evidence is reversed and the cause is remanded with the direction to sustain the demurrer and render judgment for the city.