No. 38,569

John P. Ahrend, *Appellant*, v. The City of Kansas City, Kansas, a Municipal Corporation, *Appellee*.

(243 P. 2d 1031)

Opinion filed May 10, 1952.

*Leonard O. Thomas*, of Kansas City, argued the cause and *Arthur J. Stanley*, *Arthur J. Stanley, Jr., J. E. Schroeder* and *Lee E. Weeks*, all of Kansas City, were on the briefs for the appellant.

*William H. Towers*, deputy city attorney, of Kansas City, argued the cause and *C. W. Brenneisen, Jr.*, city attorney, *James J. Lysaught*, deputy city attorney and *Alton H. Skinner*, city counselor, all of Kansas City, were on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: This is an action for damages alleged to have been sustained when a truck driven by an employee of defendant was backed against plaintiff, and he was caught between the rear end of the truck and a warehouse door.

While a motion to make the petition more definite and certain was pending plaintiff filed an amended petition. In it he alleged that he was an employee of a firm which sold cement and one of

his duties consisted of assisting in its sale by loading it on trucks at the warehouse; that on December 27, 1949, the defendant, through one of its agents, directed one of its employees to drive a truck to the warehouse of plaintiff's employer for a load of fifty sacks of cement; that defendant intended to use it in connection with the repair of streets, which the defendant assumed to maintain for the benefit of its inhabitants; that this employee drove the truck to the warehouse and into a private driveway to a certain door of the warehouse; that the employee of the city backed the truck into the door without looking to the rear and after having agreed with the plaintiff not to back the truck without a further signal, at a time when plaintiff was opening the door, and at a time when he knew, or in the exercise of due care, should have known plaintiff was opening the door, and as a direct result he caused the truck to hit the door with great force and caused plaintiff to be pinned between the door and the door casing and the plaintiff to be injured.

The petition next alleged that at the time of the injury the driver of the truck was drunk and unable to operate the truck properly, which was known by his immediate superior, and the defendant failed to perform its ministerial duty of preventing him from driving this truck while he was drunk.

The petition next alleged that the truck driver informed the A. C. Cooke Company as he drove on its premises that he wanted fifty sacks of cement for the defendant and after the injury of plaintiff he received this cement, signed for it and was at the time acting for the city in its proprietary capacity; that the Cooke firm would have, had the city requested, caused the cement to have been delivered to defendant at the place where it was to be used but would have made a charge for that service; and defendant by coming to the warehouse for the cement and transporting it to the job was competing with other citizens of the city who were in the business of hauling cement.

The prayer was for $25,000 damages.

The defendant's demurrer on the ground that the petition did not state facts sufficient to constitute a cause of action was overruled, also its motion to strike certain allegations.

The defendant then answered admitting the identity of the parties and that plaintiff was an employee of A. C. Cooke Company, which sold cement.

The defendant next alleged that it bought cement from the com-

pany to be used in the construction, maintenance and repair of its streets and sewers and that the materials so purchased had been either delivered to the place where the work was being done by the city or had been delivered to trucks, whichever was more convenient to the city. The answer then described how it claimed the injury to plaintiff occurred, which allegations amounted to a denial of any negligence of the truck driver, also a general denial.

The answer then contained paragraph 5. This is the subject matter of this appeal and will be set out here.

"Defendant for further answer states that the cement obtained from the A. C. Cooke Company for said defendant City by Jewell Walker was used in the construction, maintenance, improvement and repair of the public streets and public sewers within the city limits of said defendant City. That the defendant City is required to maintain the streets for the benefit of its citizens and inhabitants and to keep said streets in a safe condition for the benefit of the traveling public generally, and the City is required to maintain public sewers for the benefit of its citizens and inhabitants. That the defendant City maintains said public streets and public sewers as a public service, and no charge is made for said service and no financial gain is realized by said defendant City for the services so rendered. That in the construction, maintenance, improvement and repair of the public streets and public sewers within the city limits of said City and in the work of assembling material for said construction, maintenance, improvement and repair of said streets and sewers, said defendant City is performing a governmental function."

The answer then contained allegations of contributory negligence of plaintiff.

The plaintiff demurred to paragraph 5, already set out above. The demurrer was overruled. Hence this appeal.

Plaintiff argues that the allegations of paragraph 5 attempt to set up the defense that the city, in purchasing the cement for the repair of its streets and sewers, was acting in its governmental rather than its proprietary capacity and hence not liable. The plaintiff concedes the general rule to be that the city acts in two capacities—governmental and proprietary—and is not liable for its torts while acting in the one capacity and is when acting in the other. It is argued here that there are circumstances taking this case out of the non-liability rule.

Plaintiff points out first that he was injured while the city was purchasing the cement or rather while it was accepting delivery of it at the warehouse. Plaintiff attempts to draw a distinction between the use of the cement in the repair of its streets and sewers and the purchase of it or accepting delivery of it. In this connection he cites and relies on *City of Lawrence v. French,* 136 Kan.

687, 18 P. 2d 570. That was not a damage action but one in mandamus by the city to compel the state auditor to refund money collected from the city as motor fuel taxes. The question was whether the purchase and use of motor fuel by the city for the operation of motor vehicles was a ministerial function of the city rather than an act in the exercise of its governmental function. We held it was a ministerial act.

Plaintiff does not cite any opinion where we have upheld such a fine distinction in a case where an attempt was being made to hold the city liable in a tort case. An analogous case is *Frost v. City of Topeka*, 98 Kan. 636, 161 Pac. 936. There the city had been engaged in constructing a hospital and incidental to this work had done some blasting while installing the water and sewage system for it. Some one had left dynamite caps where a child found them and was injured. Suit was brought against the city. We said:

"The enterprise was public and governmental from its inception, and in doing the work of constructing the building and installing the water and sewer systems the city acted as a mere agency of the state in promoting the general welfare. While the dynamite caps were property of the city they were mere contributions to the enterprise the same as building material, water pipe, sewer pipe and other articles necessary to secure the ultimate end in view. If, in performing the work of constructing and equipping the hospital and putting the grounds in condition for occupancy, material of any kind were used or disposed of in a negligent or unsafe way, the capacity in which the city acted shielded it from pecuniary liability. When construction was completed and maintenance of the institution as a detention hospital was begun the relation of the city to the project remained the same, and if for any reason the premises were not safe for occupancy by persons detained in the hospital, the same exemption from liability existed."

There is no question here but that this cement was to be used in the repair of the city streets. That the city is not liable for the negligence of its officers and employees while engaged in the repair of its streets is not open to question. (See *Parker v. City of Wichita*, 150 Kan. 249, 92 P. 2d 86; also *Rose v. City of Wichita*, 148 Kan. 317, 80 P. 2d 1078.) The procuring of the cement at the warehouse of Cooke & Company was incidental and a part of the work in which the city was engaged, that of repairing the city streets. It would be a strained construction to limit the nonliability of the city to the precise scene of the work. The driver of the truck was engaged in repairing the city streets as much when loading the cement at the warehouse as when he was unloading it at the place where the work was being done.

Plaintiff next points out the allegation in the petition that the

driver of the truck was drunk at the time of the injury. He argues that the act of the officers of the city in permitting him to drive the truck while drunk takes the city out of the nonliability rule. Plaintiff does not give us the benefit of any authorities to maintain this point nor do we find any. The contention is not good.

The judgment of the trial court is affirmed.